Good morning, Your Honors. May it please the Court, I'm Gary Williams. I represent the Fullers. The Fullers are the plaintiffs and the policyholders in the case. The case, as you know, concerns a cancellation. What happened was the Fullers were decorating their house in preparation for a Super Bowl party on a malfunction in a heating fireplace and the house caught on fire. Unbeknownst to the Fullers, their policy had been canceled two days before by Safeco. So the issue that's before the Court here and was below is whether Safeco effectively canceled that policy by following the statute in Washington that RCW 4818290. The Fullers weren't the only ones who didn't receive notice of the cancellation. Their insurance agency also received no letter, no notice of cancellation. The record shows declarations from three people at the agency, and they rely on copies of notices of cancellation, that when they come in, the agency takes action, gets on the phone. Mrs. Fuller, it says here that you didn't pay your premium, they're going to cancel you. Okay, let's take care of it. That's how it should work. It doesn't work, of course, when Safeco doesn't send a copy of the notice to the agent. About three months after denying the claim, Safeco came up with an affidavit, and the statute says that an affidavit from the person who made or can be prima facie evidence that the cancellation was effective. Mr. Moda says in his affidavit all the magic words that the statute requires. For example, he says, I made, I supervised the mailing of the cancellation notice. Can I ask you a question one step back for one second? Can the fact that the Fullers, neither the Fullers nor their agent received the notice, create a genuine issue of material fact under the statute? I absolutely think so, Your Honor. Maybe a more interesting question is, if we didn't have the agent in there, can just any insured say, oh, I didn't get the notice, and then force a trial? I don't know the answer to that question, but here we have not only the Fullers, but also their insurance agents. So I have evidence that that cancellation notice never was mailed because two people didn't get it in Port Angeles. So I thought that under Washington law, of course we're applying Washington law here, that an insurer wasn't required to prove actual receipt as long as the statutory procedures were shown. I have a note that that's from Isaacson. So if they complied with the statutory procedures, then they don't have to show actual receipt. I'm not disagreeing that lack of receipt is certainly some evidence that it wasn't sent, but in Washington, the insurer doesn't have to show actual receipt. Is that right? That's absolutely true, Your Honor. And what I've tried to do throughout this case below and in the briefing here is to say, that's the law. We agree with that. We're not asking the court to change that. What we're asking the court to do is to look at the facts and, first of all, determine whether or not that cancellation was properly done. Because if it wasn't, there's no cancellation. So we're looking at the statute. And help me, the term I had the most problem with, I had a problem with a couple of the statutory requirements. But one of them was, what does supervising such a mailing mean? So the word supervise or supervising isn't defined in that statute, the cancellation statute. There are some other Washington statutes which say supervision does not require a person to be on site. So you can supervise, a doctor can supervise physician assistants without being on site. Or a plumbing, a plumber can supervise trainees without being on site the whole time. So how do we understand what supervising means in this context under Washington law? First of all, both parties agree that this statute should be construed strictly against cancellation. And that's a trade off. Safeco only has to prove they mailed it. And that can lead to some losses that shouldn't happen. So we construe this statute strictly against cancellation. Whether Mr. Mota was on the premises or not at the time they claimed the cancellation notice was mailed does tend to show that he wasn't supervising the mailing. Well, why is that? Is there a definition or a case or something that would help me say that a supervisor has to be on site? Or does the supervisor have to be actually looking at the machine? Help me understand how to construe that term. There isn't a case and there is not a statute or a regulation which construes that term as far as I know. And I certainly look. The problem with Mr. Mota goes far beyond whether he was on the premises or whether he was supervising. Mr. Mota's affidavit starts out by saying, I am a shift supervisor for operations support for Safeco. I am a shift supervisor. I ask him at his deposition, what shift? He said, I shift, I supervise from 6 o'clock in the morning until 2 o'clock in the afternoon. We call it first shift. This notice is alleged to have gone out at 3.10 a.m., which is third shift. Mota testified that he doesn't supervise anything that happens on any shift other than his own. He is a shift supervisor. That is his job. And both his affidavit and his deposition testimony make that very clear. He didn't supervise this mailing. He didn't make the mailing. He is not competent to testify whether or not that mailing was made. But he could testify concerning the standard practice that is utilized by Safeco, correct? He could. He could. But bear in mind, Your Honor, that the classic mailbox rule that we use in most forms of commerce really doesn't apply here. We have a detailed step-by-step statute that says exactly what Safeco has to do in order to mail this and effect cancellation. If Safeco follows that statute, the cancellation is effective. If Safeco didn't follow the statute, the cancellation is of no avail at all. So I've been looking at the statute. It's attached as an appendix to my opening brief. And I think it's important to look at it closely, as the courts do. What the statute says in Section 1 is that cancellation may be effected only upon compliance with the following. Thereafter, there are five subsections, A through E. A, the insurer must deliver or mail written notice of cancellation. B doesn't apply. C, if the insurer cancels for nonpayment, insurer must deliver or mail the notice to the named insured. D doesn't apply. E, and this is a point of dispute, E, like notice must also be delivered or mailed to each mortgagee. Like notice must also be so delivered or mailed to each mortgagee. And that's Section E, subsection E under Section 1, which says Safeco must comply. And the only way they can cancel it is by compliance with A through E, which includes mailing a notice to the mortgagee. They didn't do that. I thought we had this Washington case, my notes say Wisniewski, something like that, saying that the failure to send the notice to a lien holder didn't make it ineffective, the cancellation to the insured. There's the Wisniewski case, which is a 1980 Washington Court of Appeals case on an old version of the statute. The opinions quotes the statute, and what it said at that time was in order to cancel, the company had to mail the notice either to the insured or to the mortgagee. I don't know how that would work, but that's what the statute said. So at that time it was very clear that you could just mail the notice to the insured and that would take care of it. Over time, mortgagees have obtained a great deal more protection in property insurance policies than they used to have. And one of those protections is this one, which requires notice. And in Wisniewski, there was no question but that it had been mailed to someone, to one of the parties. True. Both sides agreed. Yes, yes, it was agreed. And Wisniewski was arguing that mailing didn't do it, that the insurance company had to prove that Wisniewski actually received the notice. We don't allege that. So here, if the person who actually mailed it did an affidavit saying, I mailed this notice and it wasn't received, still that would be sufficient to terminate the policy if there was evidence from the person who mailed it. Well, if SAFCO can prove it mailed the notice properly, then the cancellation is good. If SAFCO can't prove that, then the cancellation is not good. They could prove, or they limited to proving they mailed it from, A, either the person who put it in the mail, or B, the person who supervised that, but not otherwise. That's right, that's right. The statute is really clear in Section 3 that the affidavit of the individual, not just anybody, of the individual making or supervising is prima facie evidence of mailing. Now, the other side thinks it's conclusive and argues in their brief that as a matter of law, this affidavit from Mr. Moda carries the day. And it doesn't. It's prima facie. We can rebut it. We rebut it here, first of all, with evidence that it was not received by two entities in Port Angeles that should have received it, which raises an inference that it wasn't mailed at all. And certainly there are other reasons that those notices didn't get to where they were going if they were mailed. But it raises that inference. Is it possible that a supervisor would have to testify under the statute that he or she knows for sure that these standard practices were followed on the day that the mailing was allegedly made? That's the kind of testimony we expect at trial, certainly. And against that, we have Mr. Moda's affidavit where he talks about quality control. There was none. There was a guy who looked at the first and last of 10,183 envelopes and declared that everything was hunky-dory. That's the kind of evidence that's going to be talked about in this trial. Because the real question here is, should a jury or should a judge decide whether Safeco mailed this notice and whether Safeco has proven it? You made an argument that mailing via Pitney Bowes does not satisfy the statute. Is there any support for that, any case law or any regulation that suggests that? Only the statute which says- It says a letter depository of the United States Post Office. Yes, a letter depository of the United States Post Office. One, we construe the statute strictly against cancellation. Two, Pitney Bowes is not the post office. If the purpose here was to construe the statute in favor of cancellation, if that was the public policy, we could say, oh, it's practically the same thing. They take in the mail, they put it somewhere. They are authorized to do these things. And maybe that would carry the day. But if we construe this strictly as we have to, then the post office is the post office. A letter depository is a place to put letters. They can be private on the outside of a building or they can be owned and run by the post office. Do you think the statute doesn't allow for any intermediaries or agents to deposit the mail? Is that how you read the statute? So that the company has to actually put the letters into the post office or induct them into the post office themselves. Is that your view of the statute? Yes, that is the way I see it. So the employee would have to actually physically go to the post office. That's the way we used to do it. You would go to the post office with a list and the postmaster would check them off. And on that list would be the fullers and their address. And that would be evidence that it was done. You know, we don't do that anymore because it's too expensive and everybody's too big and too important. But they have to comply with this statute. They didn't. Counsel, I'm afraid your time has run out. I think it has. We'll add an extra minute for you for rebuttal if you want to plan for that. Thank you very much, Your Honor. All I ask is that the statute and the affidavit be looked at carefully. The answers are in there. Thank you very much. Okay, and now we'll hear from the appellee. May it please the Court, John Silk for Safeco. With respect to the Pitney Bowes issue that Your Honor raised, Mr. Moda was asked about that in his deposition, and he testified in his testimony. It's in the record that Pitney Bowes is a depository of the United States Post Office. They're authorized by the post office. They are one and the same as the post office. And so with respect to an intermediary, as soon as Safeco puts those notices on the pallet and Pitney Bowes picks them up, they're in a depository of the United States. Your Honor also asked whether absence of receipt by the insured or by their agent could somehow create a genuine issue of material fact, and the answer is no. All Safeco has to do is to establish a prima facie under the statute and under its policy that it complied with the requirements for issuing the notice of cancellation. And they did that, and we have evidence in the record that supports that. The district court properly found that, and this court on de novo review should find so as well. Counsel, let me ask you a question on that. Is it sufficient for Mr. Motor to give an affidavit as a supervisor if he didn't supervise at the time this letter was mailed? Yes, it is, Your Honor. The statute requires that it can be an affidavit of a supervisor. As was pointed out, there is no statutory definition of that term. Well, it does say supervising such a mailing, and a posting counsel says his shift as a supervisor ended at 2 or whenever, but before the mailing occurred, so somebody else was supervising the mailing according to Safeco's employment at the time it was mailed. So what's your response to that? Two things, Your Honor. As Mr. Motor testified, he's worked for the company in this position for 23 years. If anyone knows about what the procedures are and were for mailing notices, someone who's worked that long for the company certainly does. We've also cited to the Bond case where the court held that because or where one has a large company, you can have someone who relies on the business records of the company in order to establish that, in fact, a mailing was made. So that's the common law rule in opposing counsels as we're not dealing with the common law rule here. We're dealing with a statute, and the Washington Supreme Court has told us we're very picky about construing this statute. A certified mail is not the same as mail. So why isn't supervising such a mailing requires the actual employee who was supervising that shift? The employee who supervised that shift could be used in an affidavit, but I'd submit that Mr. Mota as well could because one of his responsibilities was to supervise, and I would think it would be an overly restrictive interpretation of the statute to say that someone with the knowledge that Mr. Mota has and the experience he has as outlined in the record in great detail cannot satisfy the statutory requirement of providing an affidavit of someone who supervised the mailing. Unless the Court has any further questions, I'll rely on the briefing that we've submitted. I'm not hearing any. Very well, thank you. Thank you, Relief. Thank you. I don't have anything to add to that, Your Honor. Great. Well, we appreciate arguments from both counsel. Thank you for your fine arguments. Thank you, Your Honor. This will turn to the case of Don Vermillion v. Berryhill.
judges: Gould, Ikuta, Tunheim